# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

### HELENA DIVISION

CAROL LAFOUNTAINE, an
individual,

               Plaintiff,

vs.

HARVEST MANAGEMENT SUB
TRS CORP., d/b/a Holiday
Retirement,

               Defendant.

No.  CV 17-95-H-SEH

**ORDER**

## INTRODUCTION AND BACKGROUND

Plaintiff Carol LaFountaine ("Plaintiff") asserts in this case that she was
wrongfully discharged from Hunter's Pointe Retirement Community by Defendant
Harvest Management ("Defendant") without good cause for termination, because
Defendant violated its written personnel policies in terminating her employment,[1]
that the reason given for termination was a pretext and that instead, she was fired

---

[1] Doc. 5 at 3-4.

in retaliation for complaints made against two of Defendant's lead managers

contrary to Defendant's written personnel policies.[2]

Defendant moved for summary judgment on grounds (1) that Plaintiff was

terminated for good cause and (2) that termination did not violate Defendant's

written personnel policies.[3] Plaintiff claims issues of material fact remain that

preclude summary judgment.[4] Neither argument has merit.

## FACTS

Undisputed facts of record establish:

1.      Plaintiff, by written communication, asserted that Defendant's

Director of Sales exhibited work-related "childish behavior."[5]

2.      Plaintiff informed one manager, Gwen Chambers, by email that the

manager needed to "join the team" and "drop the attitude."[6] She later testified that

the communications with Chambers were "not appropriate".[7]

---

[2] *Id.* at 4.

[3] Doc. 73.

[4] Doc . 80.

[5] Doc. 76-12 at 1.

[6] Doc. 76-5 at 1.

[7] Doc. 76-2 at 7; Dep. LaFountaine at 144: 22.

3.     Plaintiff's Regional Director, Bryan Culliton, received numerous complaints from Plaintiff's fellow employees, including Andreas Graa, Bob Lesselyoung, Chris Bullard, Bob Dannic, Maretta Meyers, John Shearer, Gwen Chambers, Judy McGarvey, and Kevin McGarvey about Plaintiff's "behavior, tone, being abrupt with associates . . . general poor communication, poor leadership, and ability to lead the business."[8]

4.     Fellow employee, Chef Chris Bullard, informed the Montana Department of Labor that Plaintiff's comduct had "gone beyond harassment and [h]ad turned into defamation of character."[9]

5.     Plaintiff responded to Bullard's complaint by an email sent to multiple employees including Bullard stating that if Bullard wants "to be part of this management team he should start to show it."[10]

6.     Plaintiff openly called another employee a "dickhead" in the presence of several other employees.[11] She later acknowledged such name calling was "not an appropriate" communication.[12]

---

[8] Doc. 76-1 at 15-17.

[9] Doc. 76-4 at 9.

[10] *Id.* at 6.

[11] Doc. 76-2 at 137; Dep. LaFountaine at 524: 8.

[12] Doc. 76-2 at 137; Dep. LaFountaine at 524: 14.

7.     On March 3, 2015, Plaintiff was issued a final written warning addressing the employer's concerns over her interactions with staff including disparaging staff members in communications with other staff, threatening staff members, calling an employee a "dickhead", and creating a divisive management environment.[13]

8.     The March 3, 2015 written warning also stated, "[f]ailure to immediately and consistently demonstrate acceptable behaviors will result in immediate termination of employment."[14]

9.     Plaintiff accused her employer's events department of having "[no] follow-through . . . or communications" shortly after receipt of the final written warning.[15] She later testified that her communications with the events department were inappropriate.[16]

10.     Lead Manager Judy McGarvey observed inappropriate confrontations initiated by Plaintiff with other employees including housekeepers, kitchen staff, event staff, maintenance man, and bus driver.[17]

---

[13] Doc. 76-1 at 137; Dep. LaFountaine at 524: 19-22.

[14] Doc. 76-1 at 194.

[15] Doc. 76-6 at 1.

[16] Doc. 76-1 at 147; Dep. LaFountaine at 537: 12.

[17] Doc. 76-1 at 86-7.

11.    Plaintiff and her husband, contrary to employer policy, gambled with residents for money and later admitted to having continued to gamble with residents even though she knew it violated company policy.[18]

12.    Plaintiff told a resident that the resident should see a doctor concerning her diet.[19] She later acknowledged, in sworn testimony that she was aware that providing opinions on a resident's care decisions violated Real Estate Investment Trust ("REIT") guidelines that the employer was required to follow.[20]

13.    Plaintiff asserted a particular resident was "batshit crazy." She later brought the same resident's estranged daughter-in-law to Hunter's Pointe to "prove it,"[21] referred to the resident in a derogatory manner and left assigned work duties to speak with the resident's estranged daughter-in-law, who was not the resident's attorney-in-fact, concerning the resident's care.[22]

14.    Plaintiff acknowledged under oath that "in certain situations, 'her [Plaintiff's] behavior was very poor,' that she 'exacerbated the situation' at

_____

[18] Doc. 76-1 at 95-6; Dep. LaFountaine at 563: 15-21.

[19] Doc. 76-1 at 150-51; Dep. LaFountaine at 545: 23-5, 546: 1-9, 538: 1-25, 539: 1.

[20] Doc. 76-1 at 148-49; Dep. LaFountaine at 538: 1-25, 539: 1.

[21] Doc. 76-1 at 99; Doc. 76-1 at 109; Doc. 76-11 at 6.

[22] Doc. 76-1 at 64.

Hunter's Pointe and, that she engaged in 'unsatisfactory conduct.'"[23] Plaintiff further acknowledged under oath that, at times, she [Plaintiff] was part of the problem at Hunter's Pointe, not the solution.[24]

## DISCUSSION

Summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[25] To defeat the motion, the non-movant must set forth specific facts rising to the level of genuine issues and, in doing so, may not rely on mere allegations contained in the pleadings.[26]

The Montana Supreme Court has "stressed the importance of the 'right of an employer to exercise discretion' over who 'it will employ and keep in employment.'"[27] Summary judgment may be granted if "the employee fails to

---

[23] Doc. 81 at 33(quoting Doc. 76-1 at 155-56; Dep. LaFountaine 571: 1-572:20).

[24] Doc. 76-1 at 156; Dep. LaFountaine 572: 15-20.

[25] FED. R. CIV. P. 56(c); *Celotex Corp. V. Catrett*, 477 U.S. 317, 322 (1986).

[26] FED. R. CIV. P. 56(e); *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 617 (9th Cir. 1981).

[27] *Sullivan v. Cont'l Constr. Of Mont., LLC*, 2013 MT 106, ¶ 18, 370 Mont. 8, 299 P.3d 832 (quoting *Buck v. Billings Montana Chevrolet, Inc.*, 248 Mont. 276, 282, 811 P.2d 537, 540 (1991)).

provide evidence beyond mere speculation that the given reasons for the termination are a pretext and not the honest reason."[28] Furthermore a party's "proffered evidence regarding the other reasons for her termination, and her characterization of that evidence, does 'not render summary judgment inappropriate where there are facts not in dispute that provide good cause for discharge from employment.'"[29]

Good cause for termination exists when "an employee's dismissal [is] based on: (a) the employee's failure to satisfactorily perform job duties; (b) the employee's disruption of the employer's operation; or (c) the employee's material or repeated violation of an express provision of the employer's written policies."[30] A termination is wrongful only if: "(a) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy; (b) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or (c) the employer materially violated an express provision of its own written personnel policy prior to the discharge, and

---

[28] *Putnam v. Cent. Mont. Med. Ctr.*, 2020 MT 65, ¶ 21, 399 Mont. 241, 460 P.3d 419.

[29] *Bird v. Cascade Cty.,* 2016 MT 345, ¶ 23, 386 Mont. 69, 386 P.3d 602 (citing *Davis v. State Dept. Public Health & Human Svcs.*, 2015 MT 264, ¶ 14, 381 Mont. 59, 357 P.3d 320)(emphasis in original).

[30] MONT. CODE ANN. § 39-2-903(5) (2021).

the violation deprived the employee of a fair and reasonable opportunity to remain in a position of employment with the employer."[31]

Regardless of whether Plaintiff, (1) wrongfully or rightfully received a written warning for failing to enter a proper move out notice into Hunter's Pointe's record systems; or (2) called a residence's daughter a nuisance and told the same resident that her daughter would not be allowed in Hunter's Pointe after the resident passed away,[32] Plaintiff was terminated for (1) "continued divisive behavior" that disrupted Hunter's Pointe's business and services; and (2) "continued poor judgment and decision making."[33]

Plaintiff's mere speculation that the reason for her termination was a pretext and that she was terminated in retaliation for reporting her lead managers are not supported by the record apart from her own speculation. She has failed to "provide evidence, beyond mere speculation, that the given reasons for [her] termination are a pretext and not the honest reason."[34]

---

[31] MONT. CODE ANN. § 39-2-904(1).

[32] Doc. 81 at 6-7; 26-8.

[33] Doc. 76-1 at 225-226.

[34] *Putnam* at ¶ 21.

"Facts not in dispute [exist] that provide good cause for [Plaintiff's] discharge from employment.'"[35] Defendant discharged Plaintiff for legitimate business reasons that were "neither false, whimsical, arbitrary or capricious, and it [had] some logical relationship to the needs of the business,"[36] for unsatisfactorily performing her job duties, and for disrupting the employer's operation.[37]

Defendant continuously stated in written warnings–which Plaintiff acknowledges to have been understood, that Plaintiff repeatedly demonstrated divisive behavior through abrasive interactions with other employees including Defendant's Director of Sales, Lead Manager Chambers, Chef Bullard, Hunter's Pointe event staff, and the employee she referenced as "dickhead."[38] Defendant could not trust Plaintiff to do her job without inappropriate confrontations between Plaintiff and other employees.[39]

Plaintiff violated company policy by both gambling with residents and offering healthcare decision opinions to a resident while acknowledging that she

---

[35] *Davis* at ¶ 14.

[36] *Kestell v. Heritage Health Care Corp.*, 259 Mont. 518, 525, 858 P.2d 3, 7 (1993).

[37] MONT. CODE ANN. § 39-2-903(5).

[38] Doc. 76-1 at 137; Dep. LaFountaine at 524: 19-22.

[39] *See Sullivan v. Cont'l Const. of Montana*, LLC, 2013 MT 106, ¶ 25, 370 Mont. 8, 299 P.3d 832.

knew both acts were against company policy.[40] An employer has a legitimate business reason in terminating an employee whose actions have or may cause "substantial damage to the company."[41]

Plaintiff asserts that since she was not in a "sensitive" managerial role that required her to make unsupervised policy decisions, she was entitled protection from discharge under a "legitimate business reasons" theory.[42] Although "a general manager has less protection than an employee who makes no policy decisions,"[43] "[t]his characterization is of no ultimate consequence to the outcome."[44] The Court "has before it [ample] evidence establishing the requisite statutory 'good cause' for termination."[45]

Here, Plaintiff (1) failed to adjust her divisive and negative behavior towards other employees after multiple written warnings, (2) failed to cease gambling with residents even though she knew it to be against the employer's

---

[40] Doc. 81 at 26.

[41] *McConkey v. Flathead Elec. Co-op.*, 2005 MT 334, ¶ 31, 330 Mont. 48, 125 P.3d 1121 (where the Court held that Defendant's were right to discharge a general manager who actions in contracting cost the employer high unforeseen financial burdens that threatened to damage the Defendant's business).

[42] Doc. 80 at 4-7.

[43] *Id.*

[44] *Davis* at ¶ 13.

[45] *Id.* (citing MONT. CODE ANN. § 39-2-903(5)).

policy, and (3) did not cease to engage in name-calling and inappropriate communications with various employees including lead managers, directors, and general staff.[46]

Plaintiff chose to be "her own worst enemy" and " exacerbate[ ] the situation at Hunter's Pointe" by continually being "part of the problem not the solution."[47] She undisputedly disrupted Defendant's business and failed to satisfactorily fulfil her job duties by (1) calling an employee in the presence of other staff a "dickhead," (2) asserting a resident was "batshit crazy" and bringing the resident's estranged daughter-in-law in to "prove it," (3) providing opinions on a resident's healthcare choices in violation of REIT guidelines, (4) continuously gambling with residents when fully aware that such actions violated company policy, and (5) continuously engaging in inappropriate and insulting communications with employees and fellow managers after multiple written warnings regarding that exact behavior were issued.[48]

Plaintiff failed to satisfactorily perform her job duties, continually disrupted Defendant's business, continued to act in violation of company policy, and negatively treated other employees, all of which put Defendant's business at risk

---

[46] *See* Doc. 81.

[47] Doc. 76-1 at 156; Dep. LaFountaine 572: 15-20.

[48] *See* Doc. 81.

of "substantial damage."[49] Defendant had substantial legitimate business reasons and good cause to terminate Plaintiff's employment.

ORDERED:

Defendant's Motion for Summary Judgment[50] is GRANTED.

The Clerk is directed to enter judgment in favor of Defendant consistent with this order.

DATED this **30**ᵗʰ day of December, 2021.

*Sam E Haddon*

SAM E. HADDON
United States District Judge

---

[49] *McConkey* at ¶ 31.

[50] Doc. 73.